IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANID INFOSOFT LLC, et al.,

    Plaintiffs,

        v.

ANTONY J. BLINKEN, Secretary of
the U.S. Department of State,

    Defendant.

CIVIL ACTION FILE
NO. 1:22-CV-4721-TWT

### OPINION AND ORDER

This is an immigration case involving the processing of H-1B visa applications. It is before the Court on the Defendants' Motion to Sever and to Dismiss [Doc. 23]. For the reasons stated below, the Defendants' Motion to Sever and to Dismiss [Doc. 23] is GRANTED.

### I.    Background[1]

This case arises out of an alleged unreasonable delay regarding the Plaintiffs' applications for H-1B visas. (2d Amended Compl. ¶¶ 169, 173-177). The Plaintiffs are nonimmigrant visa applicants, information technology companies across the country, and beneficiaries of USCIS-approved petitions for nonimmigrant work visas filed by those companies. (*Id.* ¶¶ 11-43). The

---

[1] The Court accepts the facts as alleged in the Second Amended Complaint as true for purposes of the present Motion to Dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

Defendants are the U.S. Secretary of State and the Director of USCIS, each sued in their official capacity. (*Id.* ¶¶ 44-45).

### 1. H-1B Visa Application Process

The Immigration and Nationality Act (INA) considers those who are eligible to enter the United States because they are "engaged in a specialty occupation" to be "nonimmigrant[s]." 8 U.S.C. § 1101(a)(15)(H)(i)(b). Visas that are obtained under this classification are known as H-1B visas. To obtain an H-1B visa, the individual's U.S. employer must file an attestation with the U.S. Secretary of Labor under 8 U.S.C. § 1182(t)(1) and a petition with USCIS. *Id.*; 8 C.F.R. § 214.2(h)(2)(i)(A). When the employer submits an H-1B petition, it must submit a certification from the Secretary of Labor that the employer has filed a labor condition application, a statement that the employer will comply with the terms of the labor condition application, and evidence that the individual qualifies to perform services in a "specialty occupation." 8 C.F.R. § 214.2(h)(4)(iii)(B). After the employer submits its petition, "USCIS will consider all the evidence submitted and any other evidence independently required to assist in adjudication." 8 C.F.R. § 214.2(h)(9)(i). USCIS will then notify the employer if the petition is approved. *Id.*

If the individual is currently abroad, a consular officer reviews the individual's visa application and decides whether to issue the visa. 8 U.S.C. § 1201(a)(1)(B). The approval of a petition by USCIS does not establish that the individual is eligible to receive a visa. 22 C.F.R. § 41.53(b). To the contrary,

2

if it appears to the consular officer that the individual is ineligible for a visa, the officer shall not issue the visa. 8 U.S.C. § 1201(g). According to State Department policy, the officer should instead return the petition to USCIS in those circumstances. 9 Foreign Affairs Manual 402.10-10(B).

### 2. Specific Project Requirement Litigation

In 2018, USCIS issued a Policy Memorandum that specified that petitions that involve third-party worksites must demonstrate that the employer has "specific and non-speculative qualifying assignments…for the entire time requested in the petition." U.S. CITIZENSHIP AND IMMIGR. SERVS., PM-602-0157, CONTRACTS AND ITINERARIES REQUIREMENTS FOR H-1B PETITIONS INVOLVING THIRD-PARTY WORKSITES (Feb. 22, 2018). In addition, the Policy Memorandum stated that employers must file a detailed itinerary that includes the dates and locations of the services to be provided. *Id.* These policies were successfully challenged. *See ITServe All., Inc. v. Cissna*, 443 F. Supp. 3d 14 (D.D.C. 2020). USCIS subsequently rescinded the 2018 Policy Memorandum and stated that "evidence of specific day-to-day assignments is not required to establish that the position is in a specialty occupation." U.S. CITIZENSHIP AND IMMIGR. SERVS., PM-602-0114, RECISSION OF POLICY MEMORANDA (June 17, 2020).

### 3. This Litigation

The Plaintiffs here allege that the government is still enforcing the specific project requirement. (2d Amended Compl. ¶ 5). They contend that the

3

Department of State is delaying final agency actions on visa applications by putting them in "administrative processing" and demanding proof of specific projects. (*Id.*). The Plaintiffs further contend that the Department of State often sends visa petitions back to USCIS for review and revocation when there is inadequate proof of specific projects. (*Id.* ¶ 6). The Plaintiffs have all applied and had their visa petitions initially approved by USCIS, but the Department of State has put them in administrative processing pending proof of specific projects. (*Id.* ¶¶ 68-130). The Department of State is also allegedly requesting from the Plaintiffs hundreds of pages of documents that the agency already has in its possession. (*Id.* ¶ 136). Some of the Plaintiffs' petitions have been returned to USCIS for possible revocation. (*Id.* ¶¶ 6, 8-9, 20). Because they were placed on administrative processing, the Plaintiffs have been unable to enter the country or begin working. (*Id.* ¶¶ 68-130). The Plaintiffs allege that the Defendants' actions have exceeded their statutory authority and created unreasonable delay in violation of the Administrative Procedures Act. (*Id.* ¶¶ 153-91). The case is now before the Court on the Defendants' Motion to Dismiss and Motion to Sever.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is

"improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See *Quality Foods de Centro Am., S.A. v. Latin Amwi. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); see also *Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. See *Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.   Discussion

The Defendants have moved to dismiss the claims of parties who have already been issued H-1B visas on mootness grounds. They have also moved to dismiss all Plaintiffs except for the Anid Plaintiffs (Anid Infosoft LLC, Mr. Janakiram Vupparapalli, and Ms. Pavani Reddy Kanikaram) for failure to meet the joinder requirements under Federal Rule of Civil Procedure 20. Finally, the Defendants move to dismiss the Anid Plaintiffs' claims as nonjusticiable under the doctrine of consular nonreviewability and for failure

to state a plausible claim of unreasonable delay. The Court considers each of these motions in turn.

### 1. Mootness

A case must be dismissed as moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335-36 (11th Cir. 2001) (quotation marks and citation omitted). Venkateswara Rao Ganaparthi, Santosh Keriya Jogalekar, Praveen Naga Srinivas Pandrangi, Priti Arun Pradhan, Sandeep Reddy Battu, Kalyanchakravarthi Gutta, Sampath Kumar Sankoor, Radhikaben Bhupendrabhai Parekh, and Venkata Trinadh Thamada have all been issued H-1B visas. (Nash Decl. ¶¶ 5, 12, 13, 15, 23, 24, 39, 43, 44). The parties agree—and the Court concludes—that those individuals and any other individuals who have received their H-1B visas no longer have a legally cognizable interest in this case. (Defs.' Br. in Supp. of Mot. to Dismiss, at 16-17; Pl.'s Br. in Opp'n to Mot. to Dismiss, at 1-2). As such, all claims related to these individuals who have received their H-1B visas are dismissed as moot.

### 2. Joinder

This case commenced in November 2022. The initial Complaint included the Anid Plaintiffs—with their visa applications pending at the New Delhi consulate—along with Vadlo Systems, LLC and their two beneficiary applicants with visa applications pending in Hyderabad (one of whom was issued a visa in January 2023). The only Defendant in that action was the

Secretary of State. The Anid Plaintiffs brought (1) an APA claim challenging the State Department's refusal of their H-1B visas—alleging that such refusal runs counter to an agreement and memorandum USCIS published to govern that agency's adjudication of H-1B petitions, and (2) an APA claim of unreasonable delay. The plaintiffs filed an Amended Complaint in February 2023, albeit with 18 additional plaintiffs (either petitioning IT companies or their H-1B beneficiary visa applicants) and adding USCIS Director Ur M. Jaddou as a defendant. The Plaintiffs then filed a Second Amended Complaint, which includes more than 30 plaintiffs, and involves approximately 46 H-1B visa applications across five consulates.

Federal Rule of Civil Procedure 20 permits plaintiffs to join in an action if: (1) "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (2) "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). The central purpose of this Rule "is to promote trial convenience and expedite the resolution of disputes." *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000) (citation omitted) *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003). If there are parties who are not properly joined, the Court can drop those parties. Fed. R. Civ. P. 21. The Court will do so here because the Plaintiffs' claims do not arise out of the same transaction or occurrence and because judicial efficiency would not be advanced by joinder.

7

The Plaintiffs argue that the common transaction or occurrence is the application of an unlawful rule by the Department of State. (Pl.'s Br. in Opp'n to Mot. to Dismiss, at 2). This argument fails for several reasons. First, the Plaintiffs do not allege that there is any Department of State memo, guidance, or policy that instructs consulates to apply the allegedly illegal rule. The best they do is allege on information and belief that "USCIS has directed [the Department of State] to enforce the policies and requirements that USCIS has been prohibited by courts from pursuing." (2d Amended Compl. ¶ 148). Even if the Court takes this as true, it does not show that each decision by each consulate refusing to issue a visa was part of the same transaction or occurrence. USCIS is a governmental agency under the Department of Homeland Security. It has no authoritative power to command consulates under the Department of State to act in any manner, and—again—there is no allegation that the Department of State issued any form of general policy or guidance to adhere to USCIS's alleged request. Without any alleged State Department policy, the consulates were free to make their own decisions whether to accept or reject the alleged requests by USCIS, in their own discretion. To borrow an analogy, the visa applicants here are at most like individuals "who play at the same blackjack table at different times. They may have [lost] the same amount of money, employed the same strategy, and perhaps even played with the same dealer, but they have still engaged in entirely separate transactions." *AF Holdings, LLC v. Does 1-1058*, 752 F.3d

990, 998 (D.C. Cir. 2014).

The Eleventh Circuit's ruling in *Alexander* does not prove otherwise. While the Plaintiffs are correct that the court there held that the district court did not abuse its discretion in joining the plaintiffs' individual discrimination claims, the case is factually distinguishable. *Alexander*, 207 F.3d at 1322. There, the court stated that there would be concerns with joinder if the alleged discrimination occurred at different times, with different supervisors, or in geographically remote places. *Id.* at 1324. Because "[p]laintiffs all seek relief based on the same series of discriminatory transactions by the same decision-maker in the same department during the same short time frame," the court found "none of these concerns [were] presented [t]here." *Id.* By contrast, all of these concerns are present in this case.

Furthermore, assuming *arguendo* the Plaintiffs present a common claim regarding the policy that the Department of State used, it would still have to show that the delay in processing each of their visa applications was unreasonable. *See Ahmed v. Miller*, 452 F. Supp. 3d 721, 726 (E.D. Mich. 2020). Since the Plaintiffs applied at different times to different consulates and their applications are under different circumstances (such as whether there were fraud or national security concerns or whether the applications are at USCIS or the consular post), this will be a highly individualized determination in this case. As the Defendants have said, "the Court would need to consider whether the State Department has unreasonably delayed adjudication of visa

9

applications for an individual refused in January 2021 for a fraud investigation whose petition was returned to USCIS alongside an individual refused in November 2022 for a national security review." (Reply Br. in Supp. of Mot. to Dismiss., at 6-7). In addition to providing further support that the claims are not part of the same transaction or occurrence, this shows that the joinder of the additional Plaintiffs would not increase judicial efficiency. Consequently, the Court will grant the Defendants' Motion to Sever, severing and dismissing without prejudice all of the Plaintiffs except the Anid Plaintiffs.

### 3. Justiciability

The doctrine of consular non-reviewability prohibits judicial review of "facially legitimate and bona fide" consular decisions regarding visa applications. *Del Valle v. Sec'y of State*, 16 F.4th 832, 835 (11th Cir. 2021) (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972)). This is true even where a denial of a visa is unreasonable. *Burrafato v. U.S. Dep't of State*, 523 F.2d 554, 555 n. 2 (2d Cir. 1975) (citation omitted). However, this doctrine only applies to affirmative decisions by consular officers; it does not apply to suits challenging inaction. *Gomez v. Trump*, 485 F. Supp. 3d 145, 176 (D.D.C. 2020); *Patel v. Reno*, 134 F.3d 929, 931-32 (9th Cir. 1997). This is in part because Congress has created a nondiscretionary duty to make a final determination on nonimmigrant visa applications. *Assad v. Holder*, 2013 WL 5935631 at *3 (D.N.J. Nov. 1, 2013); 8 U.S.C. § 1202(d) ("All nonimmigrant visa applications *shall be* reviewed and adjudicated by a consular officer.") (emphasis added). It

is also because adjudicating inaction will not restrict the legislative or executive branches' province of regulating which foreign nationals may enter the country. *Gomez* 485 F. Supp. 3d at 176.

Therefore, the question is whether the Defendants have made a final decision on the Plaintiffs' visa applications when the Department of State refused to grant them after the consular interviews. The Plaintiffs argue there is a distinction between a consular visa denial and a visa refusal under 8 U.S.C. § 1201(g) and assert that a visa refusal "is the functional equivalent of immigration limbo." (Pl.'s Br. in Opp'n to Mot. to Dismiss, at 6). The Defendants deny such a distinction and maintain that a refusal to issue a visa under 8 U.S.C. § 1201(g) is an unreviewable final decision. (Reply Br. in Supp. of Mot. to Dismiss, at 8). The government has made this same argument multiple times in the past. *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98-99 (D.D.C. 2020); *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Kerry ("Nine Iraqi Allies")*, 168 F. Supp. 3d 268, 282-92 (D.D.C. 2016); *Assad v. Holder*, 2013 WL 5935631 at *2-4. This Court follows the previous courts in finding that the Defendants' argument is without merit.

In *Vulupala*, the plaintiff applied for an H-1B visa and completed the mandatory interview at the U.S. consulate. A couple weeks after the interview, he received his passport back from the consulate along with a visa refusal pursuant to 8 U.S.C. § 1201(g). *Vulupala*, 438 F. Supp. 3d at 96. When the visa

11

allegedly remained in administrative processing for about five months after the interview, the plaintiff sued, and the government argued that the case should be dismissed under the doctrine of consular nonreviewability. *Id.* The court denied the government's motion: "even if the State Department chooses to characterize a [8 U.S.C. § 1201(g)] notification as a 'refusal,' an interim decision is not sufficiently final to warrant the application of the doctrine." *Id.* at 98. Thus, "the focus should be on what is actually happening" rather than what the government calls it. *Id.* The courts in *Nine Iraqi Allies*, 168 F. Supp. 3d at 284-89, and *Assad*, 2013 WL 5935631, at *2-4, similarly concluded that refusals pursuant to 8 U.S.C. § 1201(g) do not function as final decisions that fall within the ambit of the doctrine of consular nonreviewability.

Here, the Plaintiffs allege that U.S. consulates have given them notice that they have been placed on administrative processing pending proof of specific projects. (2d Amended Compl. ¶¶ 68-130). There is nothing on the record that shows the Defendants ever expressly informed the Plaintiffs that they have been finally denied. To the contrary, the Defendants allegedly told the Plaintiffs to provide several documents, including: (1) a copy of the USCIS petition and LCA, (2) a copy of the employment contract, (3) a letter from the personnel department at the U.S. end client stating that there is a vacancy, (4) a detailed description of the project to which the employee would be assigned, and (5) a complete itinerary of services or engagements. (2d Amended Compl. ¶ 133). It is unclear why the government would demand such materials

if it had already made a final determination that the visas were denied. The far more plausible explanation is that the decision to put the Plaintiffs' visa applications in administrative processing was an interim one to allow the consulates to gather more information so they could make their decisions. Accordingly, the doctrine of consular nonreviewability does not apply to this case, and the Plaintiffs' claims are justiciable.

### 4. Unreasonable Delay

The Defendants argue that the Anid Plaintiffs' complaint fails to state a viable claim of unreasonable delay against USCIS. (Defs.' Br. in Supp. of Mot. to Dismiss, at 24-25). The Administrative Procedure Act (APA) requires each agency "[w]ith due regard for the convenience and necessity of the parties…and within a reasonable time" to "conclude a matter presented to it." 5 U.S.C. § 555(b). The APA also gives a reviewing court the power to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Courts have used the six-factor analysis adopted in *Telecomm. Rsch. and Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") when determining whether an agency—including USCIS—has unreasonably delayed action. *Hidaldgo Canevaro v. Wolf*, 540 F. Supp. 3d 1235, 1244 (N.D. Ga. 2021). Those six factors are known as the *TRAC* factors, and they consist of: (1) "the time agencies take to make decisions must be governed by a 'rule of reason'"; (2) "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that

13

statutory scheme may supply content for this rule of reason"; (3) "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake"; (4) "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority"; (5) "the court should also take into account the nature and extent of the interests prejudiced by delay"; and (6) "the court need not 'find any impropriety lurking behind agency lassitude' in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80 (citations omitted). The Court finds that the Anid Plaintiffs have failed to state a claim of unreasonable delay against USCIS under these factors.

The first consideration is if the agency followed a rule of reason. Whether USCIS's actions satisfy the rule of reason "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part…upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Accordingly, it is informative—but not dispositive—that the delay alleged here is a shorter period of time than other immigration delays that were found to be reasonable, *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 52 (D.D.C. 2021) (compiling cases that have found delays between two years and five years to be reasonable). Providing more support for the Defendants, USCIS's process of

"first in, first out" has been found to be a rule of reason. *Hidalgo Canevaro*, 540 F. Supp. 3d at 1244-45. The Plaintiffs challenge the characterization of USCIS's process as "first in, first out" here because the posted processing time for H-1B adjudications is two months while Plaintiffs Kanikaram and Vupparapalli were made to wait 8 and 13 months respectively. (Pl.'s Br. in Opp'n to Mot. to Dismiss, at 7-9). Yet, the Plaintiffs are comparing how USCIS handled their petitions on reconsideration with how the agency handles new petitions. (*Id.* at 8). There is no indication that the Plaintiffs' petitions have been delayed longer than other petitions that were returned for reconsideration. Furthermore, petitions received on reconsideration are presumably more likely to have additional complications than the pool of new applications received. There is also good reason to think that USCIS will want to do a more searching inquiry into why the petition was returned. In light of the "wide discretion" that "Congress has given the agencies…in the area of immigration processing," *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017) (citations omitted), "this Court will not second-guess USCIS's processing policies." *Hidalgo Canevaro*, 540 F. Supp. 3d at 1245. As such, this factor favors the Defendants.

The second *TRAC* factor analyzes whether Congress provided any timetable or other indication of the speed with which it expects the agency to proceed. The Plaintiffs point to a maximum three-year validity period for approved H-1B petitions as evidence that final agency action is required within

15

three years. (Pl.'s Br. in Opp'n to Mot. to Dismiss, at 7). However, this is a regulation that does not purport to provide USCIS with guidance on how fast it must approve petitions. 8 C.F.R. § 214.2(h)(9)(iii)(A)(1). To the contrary, "there appears to be no statutory or regulatory deadlines by which an I-129 petition for non-immigrant status must be processed." *Pedrozo v. Clinton*, 610 F. Supp. 2d 730, 738 (S.D. Tex. 2009). Therefore, the second factor favors the Defendants.

The third, fourth, and fifth factors involve the effects that the delay is having and the effects that expediting the delayed action would cause. The Plaintiffs allege that they have suffered from "lost productivity and wages, unnecessary anxiety, and stress about whether their job will remain available." (2d Amended Compl. ¶ 183). Moreover, given the validity period of the H-1B visas, the Plaintiffs argue that the delays have caused them "to forfeit over a year of valuable time on their visa." (Pl.'s Br. in Opp'n to Mot. to Dismiss, at 8). The Court takes these concerns seriously. However, "putting [the Anid Plaintiffs] at the head of the queue simply moves all others back one space and produces no net gain." *In re Barr Laboratories, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991). Granting the Plaintiffs' requested relief would simply cause other people who have applied for H-1B visas to suffer the same effects that the Plaintiffs have alleged here. Accordingly, "a juridically-sanctioned re-ordering of USCIS's process would net no prioritization of human welfare." *Hidalgo Canevaro*, 540 F. Supp. 3d at 1245. The Court therefore finds that these factors

do not weigh in the Plaintiffs' favor.

The final factor concerns any alleged impropriety by the agency. The Plaintiffs take issue with the fact that "USCIS deprioritizes cases that have already been previously vetted and approved." (Pl.'s Br. in Opp'n to Mot. to Dismiss, at 8). However, as stated above, there are likely good reasons to more carefully review petitions that have been returned by the Department of State, which makes this a weak indicator of bad faith. Plaintiffs also assert that the government is trying to impose the specific project requirement that the courts have invalidated. (2d Amended Compl. ¶¶ 3, 5). However, USCIS has approved the petitions of the Anid Plaintiffs in a timely manner and without requiring any proof of specific projects. (*Id.* ¶ 69). Furthermore, USCIS has already reapproved—apparently without any proof of specific projects, again—one of the two Anid Plaintiffs' visa application after the Department of State returned it. (Pl.'s Br. in Opp'n to Mot. to Dismiss, at 7). Consequently, there is no indication of impropriety on the part of USCIS. Since none of the *TRAC* factors favor the Plaintiffs, the Court will grant the Defendants' Motion to Dismiss and dismiss the Anid Plaintiffs' claim of unreasonable delay against USCIS.

## IV.   Conclusion

For the foregoing reasons, the Defendants' Motion to Sever and Motion to Dismiss [Doc. 23] is GRANTED.

SO ORDERED, this ___3rd___ day of November, 2023.

17

/s/ Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

18